# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Robert W. Southmayd, Appt. *v.* George Henderson et al.

Not only the original agreement, but the manner in which partnership books were kept, by persons interested in the business, is proper to be considered in determining the respective rights of partners.

Alterations or constructions made or put on partnership transactions, and acquiesced in by all for many years, should have great weight in ascertaining the equities between partners.

Under the dealings of the parties in this case,—*Held,* that a partner who, under the articles of partnership, was to receive a share of the profits as compensation, was also liable for a share of the losses.

(Argued January 28, 1887. Decided February 7, 1887.)

January Term, 1887, No. 70, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, and STERRETT, JJ. Appeal from a decree of the Common Pleas No. 3 of Philadelphia County dismissing a bill for an account. Affirmed.

The bill, answer, and replication were filed in 1863, and a master appointed. After hearing the evidence and arguments of counsel, the master died, and the papers of the case were lost. The court finally appointed Dimner Beeber, Esq., master, who reported the following facts:

---

NOTE.—For the consideration of the acts of the parties in construing a contract, see note to Wilson v. Fenimore, 2 Sad. Rep. 297.

Robert W. Southmayd, the plaintiff, and George Henderson, one of the defendants, entered into a copartnership on the first day of January, 1851, to engage in the business and trade of manufacturing, buying, and selling hats and caps, under the style and name of George Henderson & Company. The copartnership was to continue for one year from the first day of January, 1851. It was agreed between them that George Henderson, who had been for a long time before this engaged in the trade of manufacturing and dealing in hats and caps, should put his stock in trade, then owned by him, in the business of this new firm, and give his attention to and exert his skill and ability in the conduct and management of the trade and business of the new firm, and that the plaintiff, who had been for some time before this foreman in the manufacturing department of George Henderson, should exert his best endeavors for the benefit of the new concern, and give his best attention, skill, and ability to the business of the new firm, "as a compensation for which," as appears by the articles of agreement, "the said George Henderson agrees to pay and allow the said R. W. Southmayd at least the sum of $1,000 during said term, at all events, over and above all charges and losses in the said concern; and the said George Henderson agrees that if after deducting $2,000 commissions and interest on capital invested in the said trade or business by him, and all other costs, charges, expenses, disbursements, and losses on sales effected during said term in the said trade or business, if, in such case, one third of the net clear gains and profits of the said trade or business shall exceed the sum of $1,000 per annum, then he, the said R. W. Southmayd, shall have and receive, instead of the said $1,000, such one third of the net clear gains and profits; provided that the said R. W. Southmayd shall not receive more than the said $1,000 during the year, and the balance, if the said one third of the net clear gains exceed that sum, in the following year or when they are certainly ascertained;" and "the remainder of the net clear gain, after compensating the said R. W. Southmayd as aforesaid, shall belong to the said George Henderson."

This copartnership continued between these two until the first day of January, 1855, when Edwin Henderson, a son of George Henderson, and one of the defendants, became a member of the firm with one sixth interest in the partnership. In 1856 the name of the firm was changed from George Henderson

& Co., to Henderson, Southmayd, & Co. The firm, composed
of these three members, continued till the first day of January,
1857, when Thomas D. Henderson, another son of George Hen-
derson, and the third defendant in this case, became a member
of the firm, also with one sixth interest in the partnership. Of
course, neither of these last two mentioned partners was named
in the original articles of copartnership, nor were they men-
tioned when the original articles of copartnership were re-
newed from year to year by and between R. W. Southmayd and
George Henderson, "it being understood between them that
when Edwin Henderson and Thomas D. Henderson were sever-
ally admitted into the firm, each of them should take the in-
terest which he then took as part of and under the interest which
George Henderson, their father, then and there held in said
firm."

This firm as originally constituted and subsequently enlarged
by the admission of the two new partners, upon the terms as
above set forth, continued down to January 1, 1860, when new
articles of copartnership were drawn up by and between R. W.
Southmayd and George Henderson. These articles, although
written, were never signed by the said two parties, but they
were "entered into and acted under" by all the members of the
firm. Very closely in form they resemble the articles first en-
tered into by R. W. Southmayd and George Henderson; but the
marked departure from the first articles appears when they
come to provide for the compensation of R. W. Southmayd.

By the first articles R. W. Southmayd was guaranteed $1,000,
and if one third of the net clear gains amounted to more than
that, he was to have that said one third of the net clear gains.

Under the later articles of January 1, 1860, it was agreed
that, "as a compensation, the said George Henderson was to
allow R. W. Southmayd, after deducting $2,000 interest and
commission on capital invested in the said trade or business by
him, and all other costs, charges and disbursements and losses
on sales effected during said term, nine twentieths of the net
clear gains and profits." For two years and one month, to wit,
to the first of February, 1862, the firm operated under these
articles, when it was further enlarged by the admission of
William H. Henderson into it. With the doings of the firm
after February 1, 1862, we have nothing to do in this proceed-
ing. The books of the firm show that from the formation of the

partnership down to January 1, 1860, the interest of the plaintiff was one third of the profits, and, as in each one of these years the one third of the profits amounted to more than $1,000, the plaintiff was credited with them. They do not show an individual profit and loss account of each or any member of the firm, but they do show a profit and ·loss account of the firm. Divisions of the net profit and loss account of the firm were made yearly or thereabouts, and carried to the credit of the different members of the firm.

Up to January 1, 1860, the plaintiff was credited each year with one third of the profits. After that period the books show that plaintiff's interest in the firm was increased to nine twentieths, and as it then began to lose heavily, the plaintiff was charged with nine twentieths of the losses. By a mistake, plaintiff was charged with nine twentieths of some losses which occurred while his interest was only one third. He complained of this in his bill, and defendants admitted in the answer that it was a mistake, and the error was subsequently rectified; so that, as the master now understands, that is no longer a question in dispute.

The books also show that the interest of George Henderson, previous to January 1, 1855, when Edwin Henderson became a member of the firm, was two thirds; that, after that date and up to January 1, 1857, when Thomas D. Henderson became a member of the firm, it was one half; that after that date, and up to January 1, 1860, it was one third; and after that and up to the date of the firm's dissolution, February 1, 1862, it was thirteen sixtieths. During all this time he was credited with profits, so long as the firm made any, in the proportion in which he was interested in the firm, varying as his interest varied; and when the firm began to lose heavily, after January 1, 1860, he was charged with losses in the proportion in which he would have been entitled to share in the profits had there been any. They also show the same course of dealing with each of the other partners, each one receiving a share of the profits equal to his interest in the firm, and each one being charged with losses to an extent equal to his share of the profits, had there been any.

After reviewing the evidence, the master proceeded:

The main charges of the bill are found in the eighth, ninth, and tenth paragraphs of the master's abstract of the bill. They are three in number, and in substance are as follows:

First, that George Henderson, one of the defendants, with the firm's money, discounted or purchased at different times the outstanding notes of the firm at more than the legal rate of interest and applied the said discounts or profits to his own use, and, as holder of such discounted or purchased notes, presented them to the firm before maturity, and took their face value from the firm's funds without giving the firm credit for the unearned interest.

Second, that in many cases where goods were purchased by the firm on time, and no notes given in settlement, George Henderson caused false entries to be made on the books, to the effect that notes had been given for the purchases, and then discounted these pretended notes with the firm's money by paying these open accounts before maturity, and applied such discounts and profits to his own individual use.

Third, that after the interest of plaintiff was changed from one third to nine twentieths, to wit, January 1, 1860, George Henderson caused a large amount of worthless debts to be charged to profit and loss account, and the plaintiff was charged with nine twentieths of such worthless debts, when he ought to have been charged with only one third of them, because they were incurred while the interest of the plaintiff was only one third.

The answer of the defendants denied the first and second charges, as above set forth, but admitted the third charge, saying it was a mistake which would have been corrected at any time. The master now understands that it has been corrected, so that it is no longer a matter in dispute between the parties.

This left open for proof the first two charges. No evidence whatever has been offered before the present master, to substantiate either one of them; the reason, as given by plaintiff's counsel, being because after this great lapse of time, it being more than twenty years between the filing of the bill and the time of taking testimony before the master, it would be impossible to produce any such proof. The plaintiff now rests upon his allegation in the bill, namely, that no full, final, and just settlement of the partnership account had ever been made.

The real point now before the master is, Upon what principle shall such an account be stated? It is admitted on both sides that on January 1, 1860, there was a certain sum due the plaintiff. There is no appreciable difference between the experts as

to the amount. At this date the second articles of copartnership went into effect, and the plaintiff's contention is that by their terms he is not liable for loss beyond "a total reduction of profit;" in other words, that by their terms his share of the profits, earned for any one year, is liable for losses incurred during that year; but when his profits are totally consumed by his losses, then his liability for a proportion of further losses ceases. Consequently, he contends that the balance due him January 1, 1860, is to be treated as a loan made to the firm at that date and is still due him, less, of course, the amount of cash withdrawn or received by him after that date. The defendants contend that that balance is to be considered as plaintiff's contribution to the capital of the firm, and is liable to be consumed by the losses of the firm in the proportion in which plaintiff would have been entitled to profits had there been any.

If the second articles of copartnership were to be construed literally, without any regard to the acts of the parties acting under them, there would be much strength in the argument of plaintiff's counsel, for they are between the plaintiff and George Henderson, and the other partners are not even mentioned. George Henderson is the only one mentioned as putting in capital, and Robert W. Southmayd is to be compensated by George Henderson allowing him a certain percentage of the profits. [But the master is of the opinion that to give these articles this strict literal construction, if it be the only strict construction they could have, would be to ignore the conduct of all parties in this case, from the firm's formation to its dissolution, and would establish a theory which plaintiff never mentioned in the bill, and which there is no evidence to show was ever considered, even by the plaintiff, as the true construction.]

In the first place, to sustain plaintiff's contention would be to establish a theory in direct contradiction to that on which the books were kept during the whole life of the partnership, extending over a period of eleven years. As appears by the facts found by the master the books show that from the beginning of the partnership, January 1, 1851, down to the termination of the first articles of copartnership, January 1, 1860, the interest of the plaintiff was one third of the profits.

It will be remembered that by the first articles of copartnership the plaintiff was guaranteed $1,000 per year; and if one

third of the profits amounted to more than that, he was to have such one third. As the books show from the formation of the partnership to January 1, 1860, one third of the profits amounted to more than $1,000 per year, and the plaintiff was regularly credited with them. [During all these years, then, he was treated as if he was a partner with one third interest.] Divisions of the net profit and loss account were regularly made, and he was properly credited with his one third.

The books also show the same course of dealing with each of the other partners. While George Henderson was the only other partner in the divisions of the net profit and loss account, he was regularly credited with two thirds, and when his sons came into the partnership, at different times, his proportion of the net profit and loss account was diminished by the amount, or rather proportion, with which those sons were credited. After January 1, 1860, the guaranteed sum to the plaintiff was no longer a part of the copartnership articles, but his interest in the profits was increased to nine twentieths. Then the books show that he was regularly charged with nine twentieths, but of losses instead of profits, as the firm did a losing business after that time. The other partners were treated in the same way, each one being charged with losses in the proportion in which he would have been credited with profits, had there been any. [The plaintiff never once complained of this, never mentioned it in his bill, and no testimony before the master shows that he ever thought that this was wrong. On the contrary, he was present on one occasion when the profit and loss account was being charged in these proportions to the different members of the firm, and he did not object.]

Again [the books show an entry that is entirely inconsistent with the theory that the balance to the plaintiff's credit on January 1, 1860, is to be considered as a loan to the firm. That entry is a credit of $569.79, as interest on capital, due the plaintiff.] The witness, who was the bookkeeper of the firm and made that entry, says that it was made as the result of a conversation had with the members of the firm, in which he called their attention to the fact that George Henderson was the only member who had been receiving interest on his capital. They then agreed that each of the other members should likewise be

credited with interest on capital, and such entries were accordingly made in the cases of the other partners.

In the second place, to sustain the theory of plaintiff's counsel would be to contradict plaintiff himself. One of the grounds of complaint alleged in the bill was that the plaintiff was charged on the books, under instructions by George Henderson, with a large amount of losses at the rate of nine twentieths, when he ought to have been charged with them only at the rate of one third. The language of the bill in reference to these losses is: "And your orator avers that these losses, so charged to profit and loss account, were incurred by the firm while the interest of your orator in said partnership was but one third; and that your orator should therefore be charged with only one third of said losses; and that the charge of nine twentieths of said losses is greatly in excess of the amount which in justice and equity should be borne by your orator."

[The master thinks that this is an admission by the plaintiff that under the first articles he was liable for one third of the losses.] It is not, perhaps, an admission of liability to such an extent as to reduce the $1,000 guaranteed under the first articles, but it certainly is an admission of liability which might take away plaintiff's share of profits down to the point of the $1,000 guaranteed.

Now if, under the first articles, as this admission shows the plaintiff understood them, he is liable for one third of the losses down to the point of the $1,000 guaranteed, it is difficult to see why, when the guaranteed sum is removed, as it was removed from the second articles, he is not liable as the other partners were. *A fortiori* is this true, when the only material difference between the first and second articles of copartnership is that the second articles omit the guaranteed sum. Again, the book-keeper of the firm, who assisted Mr. Southmayd in preparing the bill and who furnished him with the information that really led to the filing of the bill, says that Mr. Southmayd never once alluded to the theory now set up by the learned counsel. [He never once doubted that he was liable for losses in the proportion in which he was entitled to profits, had there been any.] The witness is corroborated by the fact that in the bill not the remotest allusion was made to this theory. On the contrary, it is impossible for the master to read the bill without coming to the conclusion that the grounds of complaint at that

time were altogether of another nature. It is impossible for him to conceive how a man who thought he had a claim against a firm of which he was a member, of the nature that he now says he has, could fail entirely to allude to it in his bill.

[In the third place, to sustain plaintiff's theory would be to contradict, in effect, the admission contained in the statement of plaintiff's expert and the admissions of plaintiff's counsel in their oral argument before the master.] The statement of plaintiff's expert shows that he charged plaintiff with one third of the losses that occurred prior to 1860. As this statement was offered in evidence and relied upon by plaintiff's counsel, it is presumed they are satisfied with its correctness. It then becomes an additional admission of plaintiff that he was liable for one third of the losses prior to 1860, down to the point of the guaranteed $1,000.

In their oral argument before the master, the counsel for plaintiff also made a similar admission, for they then claimed that plaintiff was entitled to a decree in his favor for the balance due him January 1, 1860, less one third of the losses incurred prior to 1860, and the cash actually received by the plaintiff after that date. It is true they do not admit this in their printed argument, which they finally submitted to the master, for in that they stand on the one clear proposition that the plaintiff's balance due him January 1, 1860, is a loan to the firm, and is yet due plaintiff, less the amount actually drawn out by him after that date.

This is not mentioned with a view of prejudicing plaintiff's case, by showing that he has changed his ground somewhat during the progress of the argument before the master, for the master recognizes that it was done with the utmost good faith, but merely to show that all parties in this case, both plaintiff, his expert, and his counsel, at one time admitted that the plaintiff was properly charged with one third of the losses prior to 1860. The effect of this admission on the master's mind is to convince him that plaintiff and defendant George Henderson always understood that under the first articles of copartnership plaintiff was to be charged with one third of the losses down to the point of the guaranteed sum.

Now, when it is observed that the second articles of copartnership differ from the first only in eliminating the guaranteed sum and in increasing the interest of the plaintiff to within one

tenth of one half of the profits, the rest of the language remaining almost identical in both articles of copartnership, the conclusion is irresistible that both plaintiff and defendants understood that under the second articles plaintiff was to be charged with nine twentieths of the losses. That being true, the master sees no reason whatever why plaintiff should not be liable for nine twentieths of all the losses, or why he should cease to be liable for losses as soon as his profits for any one year were consumed by his losses for that year. If his contention were correct, the second articles of copartnership would give him almost one half the profits, if there were any, and would only cause him to lose his time if the firm did a losing business. The master is of the opinion that to construe the second articles in this way would be to ignore the theory of the books, the conduct of the parties and the plaintiff's actual admissions.

The application of the law to this case, upon the facts as found by the master, is free from difficulty. The plaintiff's counsel—contending that the balance to the credit of the plaintiff on January 1, 1860, is a loan to the firm—have collected and produced authorities to show that loans made to a firm by a member are to be paid off before the assets of the firm can be distributed among its members.

The first and principal case cited is Wood v. Scoles, L. R. 1 Ch. 369. In that case it appeared by the ninth section of the articles of copartnership that either partner bringing into the firm at any time sums of money beyond his stipulated capital was to receive interest on such sums; and the court held that such sums ought to be considered as loans to the firm and as debts due by it, and should be paid off before the residue was to be divided between the partners.

The same rule is found in Lindley on Partnership, among the rules laid down by him to be used in adjusting partnership accounts, where he says: "Partnership assets should be applied in paying each partner ratably what is due from the firm to him for advances, as distinguished from capital."

The other cases cited by plaintiff's counsel, so far as they are applicable to his contention, are but illustrations of the application of this rule. The rule is well settled, but the master is of opinion that it cannot be applied to the facts in this case, for he is convinced that the balance to plaintiff's credit on January 1, 1860, never was considered by any of the partners as

a loan to the firm, and that it ought not now to be so considered. The articles of copartnership are silent upon the question as to the proportion in which each member should bear losses, but the conduct of the partners and the books show that they had a thorough understanding on this subject; and that was that each member should bear losses in the proportion in which he was to share profits.

This being so, the true rule to be applied to the facts of this case is found in § 192 of Story on Partnership: "If the articles are uncertain in their terms, or do not, in some particulars, define the respective rights and interests of the partners, those rights and interests can become fixed by the conduct of the partners."

Applying this rule the master is of opinion that the plaintiff was properly charged with one third of the losses that occurred prior to January 1, 1860, and with nine twentieths of those that occurred after that date, and consequently that he is justly indebted to the defendant, George Henderson, as the statement of defendants' expert shows, in the sum of $2,149.32.

The master recommended a decree against the plaintiff, and in favor of the defendants, for that amount.

Plaintiff's counsel excepted, *inter alia,* to the findings of facts in the report of the master inclosed in brackets.

The court entered a final decree dismissing the bill, with costs.

The assignments of error specified the action of the court in dismissing the bill with costs, and in not entering a decree for the complainant.

*Walter George Smith* and *Francis Rawle,* for appellant.— Southmayd was clearly not to bear any share of the losses. Both articles of copartnership refer to his share of the profits as compensation. Under the first articles $1,000 was guaranteed him in any event, presumably for living expenses. Under the second, although he is not guaranteed any sum, he is secured against any loss beyond his time and labor.

Southmayd was a plain workman. His duties were entirely in the sales department. Henderson was the financial partner and in charge of the accounts. The way the books were kept could not, therefore, alter the contract.

In conducting the business of a firm different duties are often assigned to different partners. The partners are charge-able with knowledge, if at all, only of that which concerns their particular branch of business. Packer v. Noble, 103 Pa. 188.

What money was due Southmayd by the firm January 1, 1860, was not capital. It was a debt due by the firm and should be paid out of the assets of the firm, after the claims of outside creditors are satisfied. Lindley, Partn. pp. 623, 827; Wood v. Scoles, L. R. 1 Ch. 369; Watson, Partn. p. 285; West v. Skip, 1 Ves. Sr. 242; Christman v. Baurichter, 31 Phila. Leg. Int. 68; Taylor v. Coffing, 18 Ill. 422; Moley v. Brine, 120 Mass. 324.

*J. Levering Jones* and *Joseph L. Caven,* for appellees.—In the absence of all contrary stipulations the profits and losses are to be borne by all the partners, according to their respective proportions thereof. Story, Partn. § 20.

Entries in the books of a partnership have been said to be as conclusive of the rights of the partners as if prescribed in the regular contract. Stewart v. Forbes, 1 Hall & T. 461.

Partnership articles in the view of courts of equity, whatever may be the rule at law, are liable to be controlled, superseded, qualified, or waived by the acts and transactions of the partner-ship in the course of the business thereof, wherever the assent of all the partners thereto may be fairly inferred, and however positive and stringent those provisions may be. Story, Partn. § 192.

"Partners, if they please, may, in the course of the partner-ship, daily come to a new arrangement, for the purpose of hav-ing some addition or alteration in the terms on which they carry on business, provided those additions or alterations be made with the unanimous concurrence of all the partners." England v. Curling, 8 Beav. 129; McDougald v. Banks, 13 Ga. 451; Story, Partn. § 192, note 4.

In all cases of doubtful interpretation the actual construction adopted by the partners in their partnership transactions will be, and indeed ought to be, adopted as the true, legitimate, and proper interpretation intended by themselves. Story, Partn. § 191.

After the dissolution of the partnership, an account of all the profits of the partnership is to be taken and a like account

of all the losses on all the business undertaken by the partnership; and if the totality of the profits exceeds the totality of the losses, the partner shall take his share of the excess. If, on the contrary, the totality of the losses exceeds that of the profits, the partner shall have neither profit nor loss. Id. § 22.

PER CURIAM:

A careful examination of this record discloses no error to give the appellant a just cause of complaint. Not only the original agreement, but also the manner in which the books were kept by the persons interested in the business, are proper to be considered in determining the respective rights of the parties. Alterations or constructions made or put on their partnership transactions, and acquiesced in by all of them for many years, should have great weight in ascertaining the equities between the parties.

This view sustains the construction found by the master.

Decree affirmed and appeal dismissed, at the costs of the appellant.